UNITED STATES of America, Appellee,

v.

Anthony A. SPAGNOLO, Jr., Appellant.

UNITED STATES of America, Appellee,

v.

Anthony J. FALVO, Appellant.

UNITED STATES of America, Appellee,

v.

Benjamin A. FUSCO, Appellant.

Nos. 76–1163 to 76–1165.

United States Court of Appeals,
Fourth Circuit.

Argued July 13, 1976.

Decided Dec. 10, 1976.

Jack S. Rhoades, Alexandria, Va. (Howard, Stevens, Lynch, Cake & Howard, Alexandria, Va., on brief), for appellant in 76–1165.

William E. Jones, Jr., Fairfax, Va., for appellant in 76–1164.

Louis Koutoulakos, Arlington, Va. (George D. Varoutsos, Arlington, Va., on brief), for appellant in 76–1163.

Justin W. Williams, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty. and Craig A. Starr, Sp. Atty., Dept. of Justice, Washington, D. C., on brief), for appellee in 76–1163, 76–1164 and 76–1165.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

The defendants appeal their convictions under an indictment which charged in one count all three defendants with extortion in violation of § 1951, 18 U.S.C., and which in another count charged Spagnolo and Falvo with obstruction of justice in violation of § 1503, 18 U.S.C. We affirm.

The evidence of the Government established that the defendant Spagnolo, assisted by his co-defendants Falvo and Fusco, concocted a plan, whereby Falvo and Fusco, who, dressed in typical gangster attire,[1] posing as "Sicilians" imported by Spagnolo "for a job," and armed, one with a sawed-off shotgun and the other with a revolver, joined Spagnolo in forcing one Bridges, under threat that unless he complied they would put him "in a pine box," to execute for a consideration of $1 a written evidence of sale of his one-half interest in the construction firm of R. S. Dodson Construction Corporation to R. S. Dodson, and to give Spagnolo $1,500, which the latter in turn passed on to his co-defendants Falvo and Fusco. Thereafter, Spagnolo gave Dodson a full account of the manner in which the three defendants had extorted the written evidence of sale and $1,500 from Bridges. Fusco and Falvo, also made incriminating statements to Dodson. Dodson was summoned as a witness before the grand jury, inquiring into the charge of extortion. He promptly told Spagnolo and Falvo that he had been summoned. Spagnolo and Falvo told Dodson to testify before the grand jury that he knew nothing about any extortion by Spagnolo, Falvo and Fusco, and Dodson did testify as instructed by Spagnolo and Falvo including testimony that on the occasion when it was claimed that the three defendants intimidated Bridges, it was Bridges who was the belligerent one, brandishing a machine gun and popping pills. Later Dodson recanted this testimony, admitted it was false, and testified before the grand jury to the information given him by the three defendants about the manner in which the title transfer of Bridges' interest in the construction company and the delivery of the $1,500 was extorted. He explained his acceptance of the transfer of Bridges' interest in his firm by stating he feared to do otherwise because of Falvo and his reputation with a pick handle. Briefly summarized, that was the Government's case on extortion and obstruction of justice.

The defendants assert three grounds of error. First, they contend that there was insufficiency of evidence of interstate commerce connected with the charge of extortion to constitute an offense under § 1951. The statute, however, condemns any extortion which "in any way or degree obstructs, delays, or affects commerce." As its language indicates, the statute is not to be narrowly construed[2] nor is it "limited to

1. Spagnolo, according to the Government's testimony, instructed Falvo, for instance, "to put on a dark suit, a dark shirt, a light tie, to wear a small ring that he knew he had in his possession and to look Mafia."

2. In *United States v. Addonizio* (3d Cir. 1971) 451 F.2d 49, 76–7, *cert. denied* 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591, the Court said:

" ' * * * That Act (the Hobbs Act) speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence.' "

*Cf. also, United States v. LeFaivre* (4th Cir. 1974) 507 F.2d 1288, 1296–7, *cert. denied* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762:

conduct which directly and immediately obstructs a particular movement of goods in interstate commerce"[3] but covers any extortions which in any degree may reasonably be regarded as affecting commerce.[4] It is of no moment whether the defendants intended or contemplated an effect on commerce[5] nor is it necessary to offer evidence that particular shipments or transactions in commerce were affected; all that is required to bring an extortion within the statute is proof of a reasonably probable effect on commerce, however, minimal, as a result of the extortion.[6]

■ Measured by these standards, there was sufficient involvement of interstate commerce here to sustain a prosecution under § 1951. Bridges was the financial source of the construction enterprise, which received most, if not all its materials and equipment, in interstate commerce. The withdrawal of Bridges was reasonably calculated to reduce the ability of the construction company to purchase material in interstate commerce. This is enough under the statute.[7]

■ The second claim of error pressed by the defendants is the failure of the trial court to provide an answer to a question submitted by the jury. This issue arose sometime in the late afternoon after the jury had retired and begun its deliberations. The jury requested an answer from the Court to the inquiry, "(d)oes threat of bodily harm by force constitute guilt on Count II?" In the meantime, however, the trial judge had left the courthouse and the jury was under the supervision of Judge Bryan. Judge Bryan told the jury that Judge Lewis, who presided at the trial and was familiar with the case, would answer their question in the morning. The jury resumed deliberations the next morning but before Judge Lewis arrived at court, they had reached a verdict. The choice was the jury's whether they should await an answer from the court or whether they could resolve the guilt or innocence of the defendants without an answer to their inquiry. The original charge of the court fully covered the matter embraced within the question and it is readily understandable that the jury could proceed without seeking further

---

"* * * We hold, therefore, that when the ordinary meaning of the Travel Act clearly covers an activity, we will not read into the Act any requirement that travel in interstate commerce or use of facilities in interstate commerce be a 'substantial' or an 'integral' part of the activity. Instead, we will apply the Act as it is written."

3. United States v. Pranno (7th Cir. 1967) 385 F.2d 387, 389, cert. denied 390 U.S. 944, 88 S.Ct. 1028, 19 L.Ed.2d 1132.

4. United States v. Amabile (7th Cir. 1968) 395 F.2d 47, 49, vacated and remanded on another ground, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297.

5. In United States v. Nakaladski (5th Cir. 1973) 481 F.2d 289, 298–9, cert. denied 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469, the Court said:
"* * * Under the Hobbs Act it is not necessary that the subject of the extortion constitute interstate commerce, or that the purpose of the extortion be to affect interstate commerce. All that is required is that trade be affected by extortion 'in any way or degree,' (citing cases) and that the victim have been induced to part with property through the use of fear."

6. United States v. Staszcuk (7th Cir. en banc 1975) 517 F.2d 53. The Court said at pp. 59–60:
"* * * We hold, however, that the commerce element of a Hobbs Act violation—the federal jurisdictional fact—may be satisfied even if the record demonstrates that the extortion had no actual effect on commerce. Congressional concern is justified by the harmful consequences of the class of transactions to which the individual extortion belongs, and jurisdiction in the particular case is satisfied by showing a realistic probability that an extortionate transaction will have some effect on interstate commerce."
In United States v. Provenzano (3d Cir. 1964) 334 F.2d 678, 692, cert. denied 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544, the Court said:
"* * * The specific amount of such money obtained by extortion or the precise manner or degree to which it had an effect on the business is of no consequence."

7. See, United States v. Staszcuk, supra, 517 F.2d at 59–60; Carbo v. United States (9th Cir. 1963) 314 F.2d 718, 732, cert. denied 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498; United States v. DeMet (7th Cir. 1973) 486 F.2d 816, 821–2, cert. denied 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558.

elucidation from the court. The jury apparently unanimously resolved not to await any restatement of the instructions. It must be assumed that they had determined that they did not need an answer to their inquiry in order to reach a verdict. Under the circumstances the defendants have no cause to complain.[8]

Lastly, the defendants assert that, because the trial judge referred at one point to Dodson as "an accomplice," he implied there had been a crime, which was the issue to be resolved by the jury. A reading of the entire charge clearly shows that whether a crime had been committed was left entirely for the jury under the evidence and we cannot conceive that the mere use of the term "accomplice" at a single point in the instructions could have possibly given the jury any other impression.

The judgments of conviction are
AFFIRMED.

---

8. *Jordon v. Bondy* (1940) 72 App.D.C. 360, 114 F.2d 599, 605; *United States v. Lanni* (E.D.Pa. 1971) 335 F.Supp. 1060, 1084, *aff'd.*, 3 Cir., 466 F.2d 1102.

In *Lanni*, the Court said:

"In this case, we do not know how many jurors sought the additional instruction, but it is clear that the jury continued deliberating while the Court was in chambers conferring with counsel and a short time later the jury reached a verdict. In this case, as in *Jordon*, each juror was polled and assented to the guilty verdict. Therefore, we can only conclude that the juror or jurors who sought additional instructions changed their mind about the need for instructions and were able to reach a guilty verdict through further deliberations." Pp. 1084–85.