UNITED STATES of America

v.

Augustine A. SALVITTI.

Crim. No. 78–258.

United States District Court,
E. D. Pennsylvania.

Jan. 22, 1979.

Peter F. Vaira, U. S. Atty., by Louis J. Ruch, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert E. Gabriel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

CAHN, District Judge.

In a four count indictment the government has charged the defendant, Augustine A. Salvitti, with violations of the Hobbs Act, 18 U.S.C. § 1951. Pursuant to a waiver by the defendant, I tried the matter without a jury. Although Fed.R.Crim.P. 23(c) does not require specific findings unless a request is made, I nevertheless make the following:

### FINDINGS OF FACT

1. At all times material to the allegations in the indictment the defendant was Executive Director of the Redevelopment Authority of the City of Philadelphia (Redevelopment Authority).

2. In the spring of 1974 the defendant inquired of one John Hassett whether he would be interested in doing consulting civil engineering and surveying work for the Redevelopment Authority. John Hassett at that time was and continuously to the present has been employed fulltime by the City of Philadelphia as a surveyor.

3. John Hassett replied to the defendant that he would be interested. Thereafter John Hassett discussed this opportunity with his brother, Vincent Hassett, who was also employed by the City of Philadelphia as a surveyor.

4. Because the amount of work anticipated was too large for the Hassett brothers to perform, they made arrangements to associate themselves with a surveying and civil engineering firm known as Kissane-Leddy & Associates, Inc. (Kissane-Leddy).

5. Kissane-Leddy is a corporation organized under the laws of the State of New Jersey with a corporate office in that state.

6. In July of 1974 John Hassett, Vincent Hassett, William Kissane, Emil Iannelli, and the defendant met in the defendant's office. The defendant introduced John Hassett, Vincent Hassett, and William Kissane to Emil Iannelli as the engineers who would be "taking over." At that time Emil Iannelli was the Deputy Executive Director of Technical Services at the Redevelopment Authority.

7. On July 19, 1974, the defendant wrote to John Hassett advising him that Kissane-Leddy had been awarded a $140,000 contract for consulting engineering services to be performed between July 1, 1974, and June 30, 1975 (first contract). The defendant's secretary typed the letter and since the defendant possessed no other address for the firm, the letter was sent to John Hassett's home. Although work under the contract had commenced as early as July, 1974, it was not until October of 1974 that the Redevelopment Authority executed a formal contract with Kissane-Leddy.

8. As a result of the award of this contract:

   (a) Vincent Hassett resigned his employment with the City of Philadelphia and became an officer and fulltime employee of Kissane-Leddy.

(b) Kissane-Leddy opened a Philadelphia office and entered into a lease for office space at 1317 Filbert Street, Philadelphia, Pennsylvania.

(c) Kissane-Leddy engaged a number of additional employees.

(d) Kissane-Leddy purchased engineering equipment and office supplies from New Jersey suppliers for use in its Philadelphia office.

9. On two occasions the Redevelopment Authority amended the contract for 1974–1975 to increase the amount payable to Kissane-Leddy for consulting engineering services to a maximum of $250,000.

10. Another contract for the period July 1, 1975, to June 30, 1976, was executed by the Redevelopment Authority and Kissane-Leddy providing for a maximum compensation of $875,000 (second contract).

11. The Redevelopment Authority amended this second contract sixteen times to provide increases in the compensation payable to Kissane-Leddy to a maximum of $1,430,000 and to extend the time within which Kissane-Leddy could perform the work.

12. Notwithstanding that the contracts provided for a maximum amount of compensation, the Redevelopment Authority had no contractual obligation to order more than a nominal amount of work.

13. In late December, 1974, or early January, 1975, the defendant summoned Vincent Hassett to his office and told him that "they want $10,000 for you to keep the contract."

14. After considering the consequences of not complying with defendant's request, William Kissane, Vincent Hassett, and John Leddy decided to make installment payments to the defendant. Pursuant to that decision Vincent Hassett made cash payments to the defendant between January of 1975 and the fall of 1975 in the approximate amount of $9,000.

15. (a) The cash to make the payments was at first generated by increasing the weekly draws of Vincent Hassett, William Kissane, and John Leddy from $500 to $700.

The $200 increase was set aside in cash; approximately $5,800 was raised in that manner and paid over to the defendant by Vincent Hassett at various times as the cash was accumulated.

(b) After April of 1975 Vincent Hassett, John Hassett, and John Leddy generated additional cash by cashing checks received from clients (other than the Redevelopment Authority) in payment of invoices for work performed by Kissane-Leddy. In some instances Vincent Hassett or John Hassett would have the corporate client make the check payable to one or the other as an individual. In others, John Leddy would cash checks made payable to Kissane-Leddy and remit the proceeds to Vincent Hassett. No record of these transactions was kept and neither Kissane-Leddy nor the individual officers reported taxable income on the amounts thus received.

16. In the spring of 1976, the defendant, at his office, made an additional request to Vincent Hassett for five percent of the amount billed by Kissane-Leddy under the second contract.

17. Thereafter Vincent Hassett, William Kissane, and John Leddy again discussed the consequences of noncompliance and decided to make the payment to the defendant in cash.

18. Approximately $6,000 to $6,500 in cash was paid to the defendant by Vincent Hassett between the spring of 1976 and November of 1976. The funds were raised by diverting receivables due Kissane-Leddy in the manner explained in Finding 15(b) above, except that Vincent Hassett kept an incomplete record of these transactions and William Kissane also participated in the cashing of checks made payable to Kissane-Leddy.

19. In January, 1977, defendant called Vincent Hassett to his office to request another payment.

20. Shortly thereafter Vincent Hassett was hospitalized, and William Kissane delivered $1,000 in cash to the defendant in February of 1977.

21. Later in 1977 the defendant said to Vincent Hassett that he must come up with more money because "they think I'm pocketing it."

22. In October of 1977 Vincent Hassett made arrangements with his accountant to obtain $5,000 in cash. The accountant did so and obtained fifty $100 bills which Vincent Hassett then delivered to defendant. The accountant recorded the serial numbers of the bills delivered but there is no evidence that they were ever traced.

## DISCUSSION

■ The government has established the foregoing facts beyond a reasonable doubt. I must therefore decide whether those facts constitute a violation of the Hobbs Act, 18 U.S.C. § 1951. The Hobbs Act forbids interference with interstate commerce by extortion. The offense contains two elements which the government must prove: interference with interstate commerce, and extortion, defined in the statute as:

> [T]he obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right.

18 U.S.C. § 1951(b)(2). In this case I find that the government has proven both elements of a Hobbs Act violation beyond a reasonable doubt.

■ First, it is clear that the acts of the defendant adversely affected interstate commerce. Kissane-Leddy is a New Jersey corporation which borrowed money from several New Jersey lenders to finance its expansion into Philadelphia and performed work in both Pennsylvania and New Jersey. Some of the officers of Kissane-Leddy are citizens of New Jersey. Kissane-Leddy is therefore engaged in interstate commerce.

■ The payments made by the officers of Kissane-Leddy to the defendant depleted the corporation's assets. Depletion of assets of a corporation engaged in interstate commerce interferes with that commerce and is sufficient to meet the jurisdictional requirement of the Hobbs Act. *United States v. Mazzei*, 521 F.2d 639 (3d Cir. 1975), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975); *United States v. Addonizio*, 451 F.2d 49 (3d Cir.), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). The least discernible interference with interstate commerce suffices. *United States v. Craig*, 573 F.2d 513 (7th Cir. 1978); *United States v. Spagnolo*, 546 F.2d 1117 (4th Cir. 1976), *cert. denied*, 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1093 (1977); *United States v. Cerilli*, 418 F.Supp. 557 (W.D.Pa. 1976). I therefore find that the defendant's requests for payments interfered with interstate commerce; whatever monies the officers of Kissane-Leddy paid to the defendant could not be spent by Kissane-Leddy in the conduct of its interstate business. The facts of this case therefore fulfill the first element of a Hobbs Act offense.

■ Second, the government has established that the defendant extorted money from the principals of Kissane-Leddy. As required by the Hobbs Act the government has proven that the defendant obtained money by putting the principals of Kissane-Leddy in fear of the consequences of not complying with his demand. Vincent Hassett, William Kissane, and John Leddy testified that not acceding to the defendant's request would have serious consequences: Kissane-Leddy would go into bankruptcy, the principals of Kissane-Leddy would go into bankruptcy, and William Kissane's father would lose his life savings of $22,000 which he had loaned to Kissane-Leddy.[1]

1. The government could have proven a violation of the Hobbs Act by this defendant even if it had failed to prove that the principals of Kissane-Leddy acted out of fear. The Hobbs Act forbids the extortion of money by the use of fear of economic harm *or* under color of official right. It is clear that the government must prove only one of those circumstances to prove a violation of the Hobbs Act, *United States v. Mazzei*, 521 F.2d 639 (3d Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975); *United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972). It is immaterial that, as in this case, the indictment is written in the conjunctive. *United States v. Niederberger*, 580 F.2d 63, 67–68 (3d Cir. 1978). Therefore, even if I would find that the princi-

The defendant disputes the credibility of this testimony and argues that the government has not proven the element of extortion. He urges that both of the contracts with the Redevelopment Authority and the eighteen amendments thereto were approved by resolution of the Board and that there is no evidence he controlled the award of the contracts or the amendments. The defendant also points out that there were no assurances of any increases, extensions, or continuances of the contracts, and argues that the alleged fears of Vincent Hassett, William Kissane, and John Leddy were unwarranted because they never had any right to depend on the continuation of the contracts. Furthermore, the defendant contends that if there was great concern for the life savings of William Kissane's father, then Kissane-Leddy would have repaid that loan promptly instead of using corporate funds for lavish travel and entertainment as well as for substantial investments. Finally, the defendant suggests that the fear of corporate and personal bankruptcy was irrational in light of the demonstrated solvency of Kissane-Leddy.

■ The fact of the matter is, however, that Kissane-Leddy depended on its contracts with the Redevelopment Authority to continue its profitability. Kissane-Leddy obligated itself to a landlord and an increased number of employees as a result of its contract with the Redevelopment Authority. It was not unreasonable for Kissane-Leddy's officers to fear economic repercussions if their most profitable contract were curtailed. While the fear of personal and corporate bankruptcy may have been an overreaction, it is clear that the defendant applied enough pressure to induce the officers of Kissane-Leddy to make the payments.[2] Thus, in their minds making the payments was the preferable course to follow.

■ To prove extortion the government need not prove that the defendant actually possessed the power to carry out his threats; it needs to prove only that the victims reasonably believed that he had such power. *United States v. Mazzei,* 521 F.2d 639 (3d Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975). However, in this case it has succeeded in proving that the defendant actually possessed the power which the principals of Kissane-Leddy thought him to have. The evidence establishes that at the outset the defendant was able to engineer the award of a contract to Kissane-Leddy. The defendant's suggestion that the selection of Kissane-Leddy was made by others is not supported by the evidence. Emil Iannelli testified that Vincent Hassett and William Kissane were introduced to him as members of the firm that was "taking over." Neither Iannelli nor his staff made that decision.

The fact that notification of the award of the initial contract was sent to John Hassett at his home address supports Mr. Iannelli's testimony. Had the staff of the Redevelopment Authority really conducted a technical review of Kissane-Leddy's qualifications, they would have secured the firm's address; John Hassett's home would not have been, in the defendant's words, "the only address we had." Moreover, the defendant testified that his secretary typed the notification letter, thereby showing that the defendant personally handled the transactions between Kissane-Leddy and the Redevelopment Authority. Had Kissane-Leddy been just another consulting firm the

---

pals of Kissane-Leddy were not in fear of economic harm when they made payments to the defendant, I would find that the defendant violated the Hobbs Act: he was a public official and under color of official right he induced Kissane-Leddy to give him money to which his position as a public official did not entitle him.

**2.** Although the government succeeded in proving that the principals of Kissane-Leddy feared personal and corporate bankruptcy if they did not accede to defendant's request, it would have succeeded in proving a Hobbs Act violation even if those fears had been less dramatic. Having the contract with the Redevelopment Authority enabled the principals of Kissane-Leddy to improve their standard of living. Curtailment of that contract would have forced them to lower their standard of living. The defendant's threat would have put them in fear of economic harm for that reason alone.

defendant would have followed what he described as the usual procedure: the letter would have been prepared by the appropriate department and given to the defendant for his signature.

Mr. Iannelli's testimony further buttressed the conclusion that the defendant exercised a great deal of control over the relationship between Kissane-Leddy and the Redevelopment Authority. Mr. Iannelli testified that when he questioned the amount of Kissane-Leddy's billings the defendant told him to cease his questioning because Kissane-Leddy was a "contributor." Clearly, the defendant had the power to steer business toward and away from Kissane-Leddy.[3]

The defendant testified in his own defense. He admitted that he had received cash contributions from Vincent Hassett in exchange for tickets to political affairs as well as to banquets held for the benefit of the Kidney Foundation of Southeastern Pennsylvania. However, the defendant denied making a request for $10,000 in 1975, making a request for five percent of the billings in 1976, or making any requests for funds in 1977. Vincent Hassett and William Kissane testified that they made payments to the defendant as charged in the indictment. Therefore the court must squarely face the issue of the witnesses' credibility.[4]

The credibility issue is a difficult one. Five of the government's witnesses testified under grants of immunity.[5] Their testimony revealed that they had engaged in dishonest acts toward both the Redevelopment Authority, which paid them for work never performed, and the United States government, which did not collect taxes on income received by Kissane-Leddy and its principals. The testimony of the government's witnesses is tainted by their dishonest acts; however, the defendant's testimony is tainted as well. On February 22, 1978, a jury convicted the defendant of one count of racketeering (18 U.S.C. § 1962), three counts of mail fraud (18 U.S.C. § 1341), and one count of extortionate interference with interstate commerce (18 U.S.C. § 1951). *United States v. Salvitti*, 451 F.Supp. 195 (E.D.Pa.1978), *aff'd* 588 F.2d 824 (1978).

Nevertheless, I do not hesitate to find that the defendant requested and received cash payments as alleged in the indictment. The testimony of the government's witnesses was consistent and corroborated by the documentary evidence presented.[6] Although the government's witnesses were sequestered at the defendant's request, John Hassett, Vincent Hassett, and William Kis-

---

**3.** The defendant's argument that his disinterest in Kissane-Leddy is shown by his proposal to reduce outside consulting engineering fees through increasing in-house staff is of little effect since that recommendation was never implemented.

**4.** Even if all of the money which Vincent Hassett and William Kissane gave to the defendant indeed represented political and charitable contributions, the court would still have to decide whether the defendant demanded the money either under a threat of economic harm or under color of official right. If he made such a demand the defendant would be guilty as charged. If, as the defendant claims, William Kissane, offered the money to show his support for the Mayor, the defendant would not be guilty of extortion. I find the testimony of the government's witnesses credible on that issue and therefore find that the defendant demanded payments from Kissane-Leddy. William Kissane represented a New Jersey firm, worked in New Jersey, and lived in New Jersey; there is no indication that he was involved with Phil-

adelphia politics in any way prior to the award of the first contract to Kissane-Leddy in 1974. It is undisputed that the defendant and William Kissane had never met prior to the meeting at which William Kissane, John Leddy, and Vincent Hassett were introduced to Mr. Iannelli as members of the firm that would be "taking over" some of the consulting engineering work for the Redevelopment Authority.

**5.** Vincent Hassett, John Hassett, William Kissane, John Leddy, and Stephen Schneider.

**6.** For example, the principals of Kissane-Leddy testified that to generate the cash required to satisfy the defendant's first demand for money they padded the bills which Kissane-Leddy submitted to the Redevelopment Authority and increased their weekly "draw" from $500 to $700. Twenty-nine corporate checks corroborate that testimony. Vincent Hassett's partial records for 1976 (finding number 18, page 5, *supra*) also support the testimony of the government's witnesses.

sane all gave the same account of the events which followed the defendant's first demand for payments. John Hassett, Vincent Hassett, William Kissane, and John Leddy corroborated each other's account of the two methods devised for generating the cash with which to pay the defendant. Their testimony remained consistent even under the exhaustive cross examination conducted by the defendant's very able counsel. These witnesses even corroborated each other's testimony on the details of their possibly illegal activities, meticulously describing the padding of bills to the Redevelopment Authority and the cashing of checks paid on accounts receivable due Kissane-Leddy. Such consistency supports the witness's testimony and undercuts the defendant's argument that Vincent Hassett is pointing to the defendant to cover up his embezzlement of Kissane-Leddy funds.[7] After observing these witnesses' demeanor and noting that the testimony of both Mr. Schneider and Mr. Iannelli corroborates the government's position I firmly believe that John Hassett, Vincent Hassett, William Kissane, and John Leddy were telling the truth. I therefore act on the collective weight of their testimony.

Where applicable the foregoing discussion shall constitute additional findings of fact. I now reach the following:

### CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this case and over the person of the defendant. 18 U.S.C. § 1951.

2. Venue is properly laid in this court.

3. The defendant induced the officers of Kissane-Leddy to give him cash to which he was not entitled in the following four instances:

(a) The payment of approximately $9,000 in 1975.

(b) The payment of between $6,000 and $6,500 in 1976.

(c) The payment of $1,000 in February, 1977.

(d) The payment of $5,000 in October, 1977.

4. By so doing the defendant affected interstate commerce.

5. The defendant extorted the four cash payments from the officers of Kissane-Leddy in violation of the Hobbs Act, 18 U.S.C. § 1951.

---

7. Mr. Schneider's testimony further eroded the defendant's argument. Had Vincent Hassett and the principals of Kissane-Leddy merely wanted to embezzle money from the company they would not have brought their accountant into the scheme, or tried to channel $5,000 out of the corporation all at once. The undisputed evidence shows that whatever money the principals of Kissane-Leddy used for their own purposes was diverted in small amounts. The defendant's attempts to show that Vincent Hassett had withdrawn as much as $2,000 and $3,000 from the corporation under the pretext of the repayment of loans failed when William Kissane testified that he knew that Vincent Hassett had loaned substantial sums of money to the corporation on several occasions.