**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4677

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHN SINGLETON, a/k/a Boogie, a/k/a DU, a/k/a
Devine Understanding,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Orangeburg.  Cameron McGowan Currie, District
Judge.  (CR-02-419)

Argued:  February 3, 2006                Decided:  May 2, 2006

Before TRAXLER, GREGORY, and DUNCAN, Circuit Judges.

Affirmed in part; vacated and remanded in part by unpublished
opinion.  Judge Gregory wrote the opinion, in which Judge Traxler
and Judge Duncan joined.

**ARGUED:** Keir Michael Weyble, BLUME, WEYBLE & LOMINACK, L.L.C.,
Columbia, South Carolina, for Appellant. Mark C. Moore, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Columbia, South Carolina, for Appellee. **ON BRIEF:** John F.
Hardaway, Columbia, South Carolina, for Appellant. Jonathan S.
Gasser, Acting United States Attorney, Columbia, South Carolina,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

GREGORY, Circuit Judge:

In this appeal, John Singleton challenges his conviction for robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and two other convictions for which the Hobbs Act charge was the predicate federal offense. He also challenges his sentence, which was imposed prior to United States v. Booker, 543 U.S. 220 (2005). For the following reasons, we affirm Singleton's convictions, but vacate his sentence and remand for resentencing.

I.

Fleming Lee owned and operated the Lee Mart convenience store in Denmark, South Carolina, which obtained much of its inventory from out-of-state suppliers. Lee lived in a trailer next door to the Lee Mart, and his practice was to take the store's daily proceeds to the safe in his residence. He would later deposit most of these proceeds in his business bank account to cover Lee Mart expenses. A few days before Memorial Day in 2000, Singleton recruited his brother-in-law Eric Johnson to participate in a robbery of the Lee Mart. Johnson was familiar with the Lee Mart because his wife Roslyn (Singleton's sister) had previously been employed there. Johnson also knew about Lee's habit of taking Lee Mart proceeds to his home, and told Singleton about this practice.

At a Memorial Day cookout, Singleton discussed the proposed robbery of the Lee Mart with two other men, Sherman Coulter and

3

Jonathan Sapp, who also agreed to participate. That evening, the four drove to Denmark and found that the Lee Mart was closed. While Singleton and Johnson stayed in the car, Coulter and Sapp went to Lee's residence armed with a 9-millimeter handgun. They rushed into Lee's home and demanded that Lee tell them where "the money" was. J.A. 165. Sapp shot Lee in the abdomen when Lee refused to cooperate, injuring him. Coulter discovered Lee's safe, and the two men beat Lee until he opened it. When Lee then struggled with the intruders, Coulter shot Lee in the face. Realizing that Lee was still alive, Sapp shot Lee again in the head as the two left. Coulter and Sapp returned to the car with between $3,600 and $6,000[1] and told Singleton and Johnson that they had killed Lee. Singleton remarked, "that is one less white person I have to worry about." J.A. 146.

Lee's body was discovered the next morning. The Lee Mart remained closed for fourteen or fifteen days while the Lee family made arrangements for Lee's funeral and the future operation of the store. Singleton, Johnson, Sapp, and Coulter were arrested and charged in federal court. Eventually, Singleton's co-defendants pled guilty and agreed to cooperate with the Government. Singleton was tried by a jury on a six-count indictment. He was convicted of

---

[1]There is some uncertainty as to the exact amount taken. Johnson testified that his equally divided share of the robbery proceeds was $900, J.A. 145, whereas Sapp testified that the total taken was around $6,000, J.A. 147.

4

robbery under the Hobbs Act, in violation of 18 U.S.C. §§ 1951 and 2 (Count 1); using a firearm in a crime of violence under circumstances constituting murder, in violation of 18 U.S.C. §§ 924(j)(1) and 2 (Count 2); conspiracy to knowingly use and carry firearms during and in relation to, and to possess firearms in furtherance of crimes of violence, in violation of 18 U.S.C. § 924(o) (Count 4); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a) (Count 5). The jury returned a verdict of not guilty on Counts 3 and 6, which related to a stolen firearm.

At Singleton's sentencing, the district court calculated a total offense level of 43 pursuant to the United States Sentencing Guidelines Manual (2003), which corresponds to a sentence of life imprisonment regardless of the defendant's criminal history category. Singleton raised an objection to the application of the Guidelines under Blakely v. Washington, 542 U.S. 296 (2004), but his argument was foreclosed at that time by our order in United States v. Hammoud, 378 F.3d 426 (4th Cir. 2004) (en banc order), in which we held that Blakely did not apply to the Sentencing Guidelines.[2] The Government requested that the district court announce an alternative sentence, pursuant to our recommendation in

---

[2]After the entry of this order, we issued the full opinion for the case in United States v. Hammoud, 381 F.3d 316 (4th Cir. 2004) (en banc). The Supreme Court later vacated Hammoud in light of Booker. See United States v. Hammoud, 543 U.S. 1097 (2005).

5

Hammoud, but the district judge declined to do so.  Instead, the court followed the then-mandatory Guidelines and imposed a life sentence.  During the hearing, the court rejected Singleton's requests for a downward departure.

## II.

We first address Singleton's challenges to his Hobbs Act robbery conviction.  The Hobbs Act prohibits robbery or extortion that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce."  18 U.S.C. § 1951(a).  Thus, the two elements of a Hobbs Act crime are: (1) robbery or extortion, and (2) interference with commerce. Stirone v. United States, 361 U.S. 212, 218 (1960).  "The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference."  Id.  Given the broad language of the Hobbs Act, we have held that this jurisdictional element is satisfied where the instant offense has a "minimal" effect on interstate commerce. United States v. Spagnolo, 546 F.2d 1117, 1119 (4th Cir. 1976).

This jurisdictional element of the Hobbs Act is the focus of Singleton's appeal.  First, Singleton argues that in light of the Supreme Court's commerce power jurisprudence in United States v. Lopez, 514 U.S. 549 (1995), and United States v. Morrison, 529 U.S. 598 (2000), the Government should have been required to prove a

6

substantial effect on commerce from the instant robbery--rather than simply a minimal effect--in order for the application of the Hobbs Act to be constitutional in his case. Second, he submits that even if only a minimal effect is required, the evidence presented here was insufficient to support such a finding by the jury. We disagree with both contentions.

A.

Singleton first asserts that the minimal effects standard, as applied to his robbery conviction under the Hobbs Act, is inconsistent with the principles of Lopez and Morrison, and thus that his conviction is unconstitutional. In United States v. Williams, 342 F.3d 350 (4th Cir. 2003), we held without qualification that Lopez and Morrison "do not disturb our continued application of th[e] 'minimal effects' standard [to the Hobbs Act]." Id. at 354. This holding is consistent with the decisions of our sister circuits. See United States v. Capozzi, 347 F.3d 327, 335-36 (1st Cir. 2003); United States v. Clausen, 328 F.3d 708, 710-11 (3d Cir. 2003); United States v. Fabian, 312 F.3d 550, 554-55 (2d Cir. 2002); United States v. Gray, 260 F.3d 1267, 1272-76 (11th Cir. 2001); United States v. Morris, 247 F.3d 1080, 1085-87 (10th Cir. 2001); United States v. Peterson, 236 F.3d 848, 851-52 (7th Cir. 2001); United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999); United States v. Harrington, 108 F.3d 1460, 1465-66

7

(D.C. Cir. 1997); United States v. Atcheson, 94 F.3d 1237, 1241-43 (9th Cir. 1996). But see United States v. McFarland, 311 F.3d 376, 409 (5th Cir. 2002) (en banc) (per curiam) (Garwood, J., dissenting) (dissenting with half of the evenly divided en banc court on the basis that the Hobbs Act's jurisdictional element should require substantial effects).

Although Singleton suggests that we can distinguish Williams, which involved the robbery of $1000 in drug trafficking proceeds from a drug dealer, we find no basis on which to do so here. Both Singleton and the defendant in Williams robbed business assets from the individual operating the business. See Williams, 342 F.3d at 355 (characterizing the stolen drug trafficking proceeds as the drug dealer's "business assets"). The fact that the two robberies involved different types of businesses is of no consequence. The relevant fact in Williams was that the affected business was an economic enterprise engaged in interstate commerce. See id. ("Drug dealing . . . is an inherently economic enterprise that affects interstate commerce."); id. at 354 (noting that "the minimal effects standard does not contravene the teachings of Lopez and Morrison" in circumstances "where the Hobbs Act reaches a quintessentially economic activity that, taken in the aggregate, substantially impacts interstate commerce"). The convenience store here meets that test--the Lee Mart was a business that purchased a

substantial portion of its inventory, including grocery items and gasoline, from out-of-state suppliers.

Accordingly, following Williams, we conclude that it was proper for the district court to apply the minimal effects standard in this case and that the district court instructed the jury properly.

B.

Alternatively, Singleton contends that even if a minimal effect on commerce satisfies this element of a Hobbs Act offense, the evidence here was insufficient to show that minimal effect. When reviewing the sufficiency of the evidence to support the conviction, we view "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." Williams, 342 F.3d at 355 (internal quotation marks omitted).

"The Hobbs Act . . . does not require proof that a defendant intended to affect commerce or that the effect on commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions." Id. at 354 (citing Spagnolo, 546 F.2d at 1118-19). This effect on commerce requirement of the Hobbs Act is satisfied "where a robbery depletes the assets of a business that is engaged in interstate commerce." Id. at 354-55 (citing United States v. Buffey, 899 F.2d 1402, 1404 (4th Cir. 1990)).

Singleton raises no challenge to the fact that the Lee Mart was a business engaged in interstate commerce. Rather, Singleton argues that the evidence was insufficient to show that the money taken constituted the assets of the Lee Mart. He asserts that any Lee Mart receipts Lee removed from the store constituted his personal money, not store funds, and that Lee could have used that money for any purpose. He equates Lee removing money from the store to an employee receiving a paycheck, and asserts that all robberies would come within federal jurisdiction if his conviction is allowed to stand.

Singleton is correct to distinguish between the robbery of an individual's personal funds and the robbery of the assets of a business in establishing an effect on commerce. See Buffey, 899 F.2d at 1406 (Under the Hobbs Act, "[e]xtorting money to be devoted to personal use from an individual does not affect interstate commerce."). However, Singleton's argument is incongruent with the facts of this case.

Sonja Folks, the Lee Mart's bookkeeper, confirmed at trial what Singleton and Johnson knew about Lee's practice of taking the daily cash receipts to his neighboring trailer. Folks testified that Lee would store the proceeds temporarily in his safe and then deposit most of those funds in the bank to cover store expenses. With respect to the particular date of the robbery, Folks stated that several thousand dollars in receipts from the preceding Friday

10

and Saturday were not in the store and, consistent with Lee's practice, would have been in Lee's residence awaiting deposit when the bank reopened after the holiday.

Thus, the evidence supported a finding that a substantial portion of the $3,600 to $6,000 netted from the robbery constituted assets of the Lee Mart, an entity engaged in interstate commerce. That Lee chose to store these funds in his home temporarily does not nullify their status as business assets. Rather, the jury reasonably could have concluded that much of the money would have been deposited in the Lee Mart's bank account to purchase more goods for the store. The fact that Lee might have retained some of the funds for his personal use is of no import. See United States v. Bengali, 11 F.3d 1207, 1212 (4th Cir. 1993) (Hobbs Act extortion offense depleted the assets of a business despite the fact that the extorted funds came from a bank account used for both business and personal expenses). Here, therefore, there was effectively no difference between robbing Lee Mart assets from Lee at his residence and robbing such funds from the store. See, e.g., United States v. Le, 256 F.3d 1229, 1237 (11th Cir. 2001) (affirming Hobbs Act conviction for attempted robbery of business assets stored in the proprietors' residence); United States v. Rodriguez-Casiano, 425 F.3d 12, 15 (1st Cir. 2005) ("That the [business assets were] located at private residences when stolen does not remove the robberies from the ambit of the Hobbs Act.").

11

Finally, we note that this is not a case where the connection to a business engaged in interstate commerce was purely fortuitous. Some courts have limited the reach of the jurisdictional element of the Hobbs Act where the effect on commerce arising from the robbery of an individual occurs by happenstance. See, e.g., United States v. Wang, 222 F.3d 234, 239-40 (6th Cir. 2000) (reversing Hobbs Act robbery conviction where individual victim "happen[ed]" to be carrying proceeds from a restaurant, and noting that its holding might be different if the defendant "knew of or was motivated by the individual victim's connection to interstate commerce"). However, the concerns of those courts are not implicated here, where the evidence demonstrated that Singleton and his cohorts targeted Lee's residence particularly because of Lee's relationship to the Lee Mart, knowing that Lee's practice was to take the store's proceeds home. See, e.g., United States v. Wilkerson, 361 F.3d 717, 731 (2d Cir. 2004) ("the fact that a robbery takes place at a residence does not transform the robbery from the robbery of a business into the random robbery of an individual . . . so long as the evidence supports the conclusion that the robbery targeted the assets of a business"). Indeed, as originally planned, the robbery was to have taken place at the Lee Mart. Thus, the effect on commerce here arose not by chance, but by design.

12

For these reasons, we conclude that the jurisdictional element of the Hobbs Act was supported by the evidence, and we affirm Singleton's conviction on Count 1.[3]

III.

Lastly, we address Singleton's challenge to his life sentence. Singleton asserts what we have termed a "statutory Booker error" in that the court treated the Guidelines as mandatory, rather than advisory. See United States v. Rodriguez, 433 F.3d 411, 414 (4th Cir. 2006) (describing the difference between a Sixth Amendment Booker error and a statutory Booker error). Singleton preserved his claim of a statutory Booker error by raising an objection under Blakely v. Washington, 542 U.S. 296 (2004), at sentencing. See Rodriguez, 433 F.3d at 416 (holding that a Blakely objection preserves a claim of statutory Booker error). We therefore review Singleton's challenge for harmless error. Id. Under harmless error review, a defendant is entitled to relief if an error has affected his substantial rights. Id.; Fed. R. Crim. Pro. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."). For this inquiry, the Government has the burden to prove that the district court would not have imposed a lesser

---

[3]Singleton also challenged his convictions on Counts 2 and 4 as without jurisdiction absent the predicate Hobbs Act offense. As we have affirmed Singleton's Hobbs Act conviction, these challenges are without merit.

sentence had it treated the Guidelines as advisory, rather than mandatory.  See Rodriquez, 433 F.3d at 416.

In the present case, the district court erred in treating the Guidelines as mandatory, see United States v. White, 405 F.3d 208, 216-17 (4th Cir. 2005), and the Government has not met its burden to show that absent this error, the district court's sentence would have been the same.  At sentencing, the district court noted for the record her decision not to announce an alternative sentence based upon 18 U.S.C. § 3553(a), treating the Guidelines as advisory.  Because the district court declined to consider even the idea of a § 3553(a) advisory Guidelines sentence, we are left with no indication as to what that sentence might have been.  Given that it is the Government's burden to prove harmless error, "the sentencing court's silence must be interpreted in favor of [the defendant]."  Rodriquez, 433 F.3d at 416.  We therefore must conclude that Singleton was prejudiced by the statutory Booker error.

The fact that the district court declined to grant a departure from the Guidelines based upon Singleton's state of mind or proportionality concerns does not alter this conclusion.  As we recently noted, "[t]he permissible factors justifying traditional departures differ from--and are more limited than--the factors a court may look to in order to justify a post-Booker variance."  United States v. Hampton, 441 F.3d 284, 288 n.2 (4th Cir. 2006).

14

Therefore, the district court's decision that a departure under the mandatory Guidelines regime was unwarranted does little to resolve the question of whether the court would impose the same sentence upon treating the Guidelines as advisory. Accordingly, we vacate Singleton's sentence and remand for resentencing.

## IV.

For the foregoing reasons, we affirm Singleton's convictions, but vacate his sentence and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART
