**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-6787**

UNITED STATES OF AMERICA,

                 Plaintiff - Appellee,

        v.

HENDERSON L. HINTON,

                 Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City.  Terrence W. Boyle, District Judge.  (2:06-cr-00015-BO-1)

Argued:  December 4, 2009          Decided:  February 24, 2010

Before WILKINSON and KING, Circuit Judges, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jeanette K. Doran, NORTH CAROLINA INSTITUTE OF CONSTITUTIONAL LAW, Raleigh, North Carolina, for Appellant. Banumathi Rangarajan, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a trial by jury, Henderson L. Hinton was found guilty of two counts of interfering with commerce by robbery, 18 U.S.C. § 1951; one count of armed bank robbery, 18 U.S.C. § 2113(a) and (d), 18 U.S.C. § 2; and three counts of using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1). The defendant appeals his convictions on multiple grounds, including sufficiency of the evidence and an alleged fatal variance in proof. We affirm the judgment.

I.

Taken in the light most favorable to the government, Evans v. United States, 504 U.S. 255, 257 (1992), the evidence presented at trial established the following. On October 16, 2006, a person armed with a revolver entered the Nationwide Insurance Agency in Ahoskie, North Carolina. After covering his face with a mask, the robber cocked the revolver in employee Marian Alston's face and whispered, "give me all your money." Alston complied by taking the robber to an adjacent office and surrendering approximately $3,000. The robber then fled the scene. According to Alston, the robber wore white tennis shoes, jeans, and a blue shirt with a white stripe and the word

2

"Nautica" across the chest.  A few days later, Alston identified Hinton from a police photo array as the person who robbed her.

Three days after the Nationwide Insurance robbery, an individual wearing a fishing hat and a blue and white striped shirt entered the offices of Bennett Insurance Services in Rocky Mount, North Carolina and approached employee Donna Kermon.  The person pulled a mask over his face, brandished a revolver at Kermon, and demanded money.  Observing the robbery in progress, Richard Bennett, the owner of Bennett Insurance Services, emerged from his office and confronted the robber.  The perpetrator then directed the revolver at Bennett and demanded money.  Bennett, who had just "exchanged" money, produced a ten dollar bill from his pocket and handed it to the robber.  After a brief struggle with Bennett over the gun, the perpetrator fled the premises.  Bennett pursued the robber and observed him in the passenger seat of an older model dark-colored Acura.  Bennett memorized a portion of the license plate number and later provided it to the police.  Several days after the robbery, as well as at trial, Kermon identified Hinton as the robber.  At the time of the robbery, Bennett Insurance Services was regularly engaged in interstate commerce.

Several hours after the Bennett Insurance robbery, a man entered the Southern Bank branch in Scotland Neck, North

3

Carolina and approached bank teller Marshell Roberson. The robber presented a firearm and asked for money. Roberson reached into her cash drawer and handed the robber approximately $1,000. After stuffing the currency in his pants pocket, he left the bank. Roberson described the robber as wearing a tan fisherman's hat, a blue and white striped shirt, and a black piece of cloth over his face. No bank employee specifically identified Hinton as the perpetrator.

Shortly thereafter, law enforcement officers responding to the Southern Bank robbery observed a black Acura traveling away from Scotland Neck. Aware that a similar vehicle had been involved in a robbery earlier that day, the officers attempted to stop the Acura. After a six mile high-speed pursuit, the vehicle eventually crashed into a ditch. Hinton was observed fleeing from the passenger side. A brief foot chase ensued, during which Hinton discarded a revolver. He was eventually apprehended after being shot by a pursuing officer. A search of the Acura revealed a white and blue striped shirt, a fisherman's cap, and a black nylon cap.[*]

---

[*] In his testimony, FBI Agent Michael Sutton identified one of the items recovered from the Acura as a black nylon cap. Despite the similar description, it is unclear whether this item was the black piece of cloth covering the Southern Bank robber's face, as described by witness Marshell Roberson.

4

Bennett was able to identify the Acura from which the defendant fled, the clothing found inside the vehicle, and the revolver recovered along Hinton's path of flight, as those involved in the Bennett Insurance robbery. A large amount of U.S. currency was also discovered in Hinton's pants pocket.

A grand jury indicted Hinton on two counts of interfering with commerce by robbery, 18 U.S.C. § 1951 (Counts One and Three); one count of armed bank robbery, 18 U.S.C. § 2113(a) and (d), and aiding and abetting the same, 18 U.S.C. § 2 (Count Five); and three counts of using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1) (Counts Two, Four, and Six). Count Three of the Indictment specifically alleged that the defendant "did unlawfully take and obtain property consisting of approximately $10.00 in United States currency, the property of Bennett Insurance Services, Inc." Count Four of the Indictment referred to the predicate crime of violence as a "robbery affecting interstate commerce in violation of Title 18, United States Code, Section 1951," involving the Bennett Insurance agency.

All counts were tried together before a jury beginning on December 10, 2007. The government's evidence in both the Nationwide and Bennett robberies consisted principally of eyewitness identification of Hinton, corroborating physical

5

evidence, such as clothing, weapon and vehicle, coupled with the circumstances of his arrest. In the Southern Bank robbery, the government's evidence was purely circumstantial and focused mainly on the events immediately preceding the defendant's arrest, along with the clothing, revolver, Acura, time-frame, and proximity to the bank. On all counts, the defense challenged the adequacy of proof of identity, the lack of forensic evidence and bank security camera photographs. The defense also argued that no witness was able to connect the clothing seized from the vehicle with the defendant. At the close of the evidence, the court denied the defendant's motion for judgment of acquittal. The jury found the defendant guilty on all counts. This appeal followed.

With respect to the Bennett Insurance robbery (Count Three), a critical issue in dispute was the ownership of the ten dollars taken from Mr. Bennett. The Indictment alleged, and the prosecution argued, that it was the property of Bennett Insurance Services. The defense maintained that the evidence was more consistent with the money being owned personally by Bennett. During deliberations, the jury asked for clarification on this point. Specifically, the jury asked, "[D]oes the ten dollars represent interstate commerce since it came from an individual?" The district court instructed the jury that

6

> the government has alleged that . . . the approximately ten dollars in United States currency, was the property of Bennett Insurance Services, Inc. Whether they have proved that is your business. Not mine. You heard the evidence, and so you have to decide beyond a reasonable doubt whether the government has proved that.

The district court summarized by stating, "[I]f they have proved that beyond a reasonable doubt, then it would be your duty to find the defendant guilty. If they have failed to prove that beyond a reasonable doubt, then it would be your duty to find the defendant not guilty. Your verdict has to be unanimous." The defense offered no objection to any of the jury instructions given by the court.

Hinton raises three issues on appeal. First, Hinton maintains the government's identification evidence was legally insufficient to support his convictions on all counts. Second, Hinton argues that there was a fatal variance between the property described in Count Three of the Indictment and the evidence presented at trial. Third, Hinton contends the government's evidence was legally insufficient to support his convictions on both Counts Three and Four because the government failed to produce evidence that the property taken in the Bennett robbery effected interstate commerce. We address each contention in turn.

7

II.

In his first assignment of error, Hinton asserts that the government's identification evidence is insufficient to sustain his convictions on all counts. In support of this argument, Hinton emphasizes several purported deficiencies in the government's evidence, namely, the lack of forensic evidence, the government's failure to show that Hinton wore the clothing attributed to the robber, and the uncertainty of witness identification testimony.

When a defendant asserts a claim of insufficient evidence, the "verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1976) (en banc)). "Reversal for insufficient evidence is reserved for the rare case 'where the prosecution's failure is clear.'" United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (citing Burks v. United States, 437 U.S. 1, 17 (1978)).

In weighing identification evidence, "it is well established at common law, with exceptions not here pertinent, that ordinarily the testimony of one eyewitness is sufficient for the purpose of identification of the perpetrator of a crime." United States v. Levi, 405 F.2d 380, 382 (4th Cir. 1968). When reviewing a sufficiency of evidence claim, this Court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven . . . ." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

With these standards in mind, we have reviewed the record and conclude that the government's identification evidence was sufficient to support Hinton's conviction. The issue of criminal agency was one of fact for the jury to resolve. With respect to the Nationwide and Bennett robberies, the jury heard testimony from Alston and Kermon identifying Hinton as the robber. Moreover, the money found on Hinton and the clothing discovered in the Acura, which was consistent with that worn in the Bennett and Southern Bank robberies, further supports the jury's identification of Hinton as the perpetrator of all three robberies. Obviously, the jury chose to credit this testimony. For these reasons, the collective evidence is more than sufficient to implicate Hinton in all three robberies.

9

Next, the defendant challenges his conviction based on a fatal variance of proof. Hinton claims that a fatal variance existed between the allegations in Count Three of the Indictment and the evidence produced at trial to support this charge. In particular, Hinton argues that the government failed to present evidence that the property taken in the robbery alleged in Count Three was actually the property of Bennett Insurance Services, as distinguished from the individual Richard Bennett. As a result, Hinton maintains that he was surprised by what he characterizes as an unexpected change in the prosecution's theory of proof, and consequently, was unable to prepare a proper defense on Counts Three and Four. He urges this Court to set aside his convictions on these counts.

"When the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment--sometimes referred to as a fatal variance--occurs." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). "A constructive amendment is a fatal variance because the indictment is altered 'to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.'" Id.

10

(quoting United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991)). "Thus, a constructive amendment violates the Fifth Amendment right to be indicted by a grand jury, is error *per se*, and must be corrected on appeal even when the defendant did not preserve the issue by objection." Id.

"However, not all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment." Id. "As long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996).

> For clarity's sake, we must point out that where the government's presentation at trial does not broaden the legal bases for conviction by allowing the jury to consider a different or less specific offense, but instead fails to establish as fact an essential element of the indicted offense, the proper challenge on appeal is to the sufficiency of the evidence.

United States v. Floresca, 38 F.3d 706, 710 n.10 (4th Cir. 1994).

In light of the evidence presented at trial and the court's instruction to the jury, Hinton's fatal variance argument is without merit. First, Hinton's argument misinterprets the government's evidence. Hinton claims that the government

11

attempted to prove the currency taken from Richard Bennett was his own personal money and not that of Bennett Insurance. To the contrary, he described the ten dollars taken in the robbery as "exchanged" currency. Although Bennett never explained the meaning of "exchanged," the jury, as trier of fact, could, and did, logically conclude that the money was a business asset. There is no indication from the evidence that the prosecution theory deviated from the allegation in the Indictment that the currency taken in the robbery was anything other than the property of Bennett Insurance. Consequently, the defendant's argument is more appropriately viewed as a failure to prove an element rather than a constructive amendment to the Indictment. See Floresca, 38 F.3d at 710 n.10.

Hinton's related argument that he was not given adequate notice of the government's revised theory of money ownership, and was unable to prepare a defense which stressed the connection between the money and interstate commerce, is equally unpersuasive. Given the trial judge's response to the jury's specific question on this issue, it is difficult to fathom counsel's confusion on this point. The nature of the charge alone provided ample notification to Hinton that a proper defense would focus on the connection between the money, regardless of the owner, and interstate commerce. Therefore,

Hinton cannot claim his defense was prejudiced, and his second ground for appeal fails.

Finally, Hinton contends that the evidence on Counts Three and Four, which charged violations of the Hobbs Act (robbery of Bennett Insurance Services) and use of a firearm in the commission of a crime of violence, respectively, failed to prove the essential element of "effect on interstate commerce." 18 U.S.C. § 1951. Hinton maintains that because a conviction on Count Three (the Bennett robbery) is a necessary prerequisite to a conviction on Count Four (the firearm charge) both must be set aside. This Court disagrees with both the defendant's logic and analysis of the evidence.

Title 18 U.S.C. § 1951, commonly known as the Hobbs Act, prohibits robbery or extortion that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). "A Hobbs Act violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce." United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003). Congress has made clear that it intended to exercise the full extent of its constitutional power "to punish interference with interstate commerce by extortion, robbery, or physical violence." Id. at 354. The Hobbs Act "outlaws such interference 'in any way or degree.'" Stirone v.

13

*United States*, 361 U.S. 212, 215 (1960) (citing 18 U.S.C. § 1951(a)). Therefore, the Fourth Circuit has "found the Hobbs Act to apply whenever the instant offense has at least a 'minimal' effect on interstate commerce." *Williams*, 342 F.3d at 354 (citing *United States v. Spagnolo*, 546 F.2d 1117, 1119 (4th Cir. 1976)).

To qualify as having a "minimal effect" on interstate commerce, the Hobbs Act "does not require proof that a defendant intended to affect commerce or that the effect on commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions." *Id.* Commerce has been considered "sufficiently affected under the Hobbs Act where a robbery depletes the assets of a business that is engaged in interstate commerce." *Id.* This "jurisdictional predicate may be satisfied though the impact upon commerce is small, and it may be shown by proof of probabilities without evidence that any particular commercial movements were affected." *United States v. Brantley*, 777 F.2d 159, 162 (4th Cir. 1985).

Based on the deference we must give to the government's evidence and the "minimal effect" on interstate commerce required, we find the evidence more than sufficient to support the jury's verdict on Count Three. The evidence demonstrated that Bennett Insurance Services transacted business with

14

customers in a number of states. Mr. Bennett, the owner, testified that the currency removed from his pocket and taken in the robbery had just been "exchanged." In the context of the evidence, it was logical to conclude, as the jury did, that the exchange at issue involved business assets. Proof of the required interstate nexus was more than adequate to satisfy the jurisdictional predicate. We find that "a reasonable finder of fact could accept [this evidence] as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Alerre, 430 F.3d at 693.

Accordingly, we find "there is substantial evidence, taking the view most favorable to the Government," to support Hinton's conviction on Count Three. Glasser, 315 U.S. at 80. While we do not believe that Hinton's conviction on Count Four (the firearm charge) is necessarily linked to proof of Count Three, the evidence was sufficient to support a conviction on that count as well.

Based on the aforementioned reasons, we affirm Hinton's convictions and sentence. Furthermore, we deny Hinton's motion for leave to file a *pro se* supplemental brief challenging his sentence on various other grounds.

AFFIRMED

15