**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-5005**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ANDRE CORBETT,

        Defendant - Appellant.

**No. 08-5033**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

NILES M. BELK,

        Defendant - Appellant.

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:07-cr-00144-RJC-1; 3:07-cr-00144-RJC-2)

Submitted: March 8, 2010        Decided: April 2, 2010

Before WILKINSON, NIEMEYER, and SHEDD, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished
per curiam opinion.

_____

Aaron E. Michel, Charlotte, North Carolina; Andrew Brady
Banzhoff, Asheville, North Carolina, for Appellants. Edward R.
Ryan, United States Attorney, Mark A. Jones, Assistant United
States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Andre Corbett was convicted of a Hobbs Act[1] conspiracy, in violation of 18 U.S.C. § 1951 (2006) (Count 1); bank robbery and aiding and abetting, in violation of 18 U.S.C. § 2113(a) (2006) (Count 2); Hobbs Act robbery and aiding and abetting, in violation of 18 U.S.C. § 1951(a), 2 (2006) (Counts 5, 9, 13, 20, and 24); possession and brandishing a firearm during and in relation to a crime of violence and aiding and abetting, in violation of 18 U.S.C. § 924(c), 2 (2006) (Counts 3, 6, 10, 14, 21, 25); obstruction of justice, in violation of 18 U.S.C. § 1503 (2006) (Counts 29 and 30); threatening a federal officer, in violation of 18 U.S.C. § 115(a)(1)(B) (2006) (Count 31); and mailing threatening communications, in violation of 18 U.S.C. § 876 (2006) (Count 32).  He received a total sentence of 1,692 months' imprisonment.

Corbett's codefendant, Niles M. Belk was convicted of a Hobbs Act conspiracy (Count 1); robbery affecting interstate commerce and aiding and abetting (Counts 5, 13, 20, and 24); and possession of a firearm during and in relation to a crime of

---

[1] In pertinent part, the Hobbs Act prohibits the unlawful obstruction of commerce, or the movement of any article of commodity in commerce, by robbery or actual or threatened violence.  18 U.S.C. § 1951.

violence and aiding and abetting (Counts 5, 14, 21, and 25).  He was sentenced to a total of 1,194 months' imprisonment.

Corbett and Belk filed timely appeals, challenging whether the evidence was sufficient to support the verdicts against them.  We affirm the district court's judgment except as to Corbett's two obstruction of justice convictions, vacate those convictions, and remand Corbett's case to permit resentencing.

"A defendant challenging the sufficiency of the evidence faces a heavy burden."  United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007).  We review a sufficiency of the evidence challenge by determining whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005); see Glasser v. United States, 315 U.S. 60, 80 (1942).  We review both direct and circumstantial evidence, and accord the Government all reasonable inferences from the facts shown to those sought to be established.  United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008).

I.  Counts 29 and 30:  Obstruction of justice

The Government concedes that the evidence was insufficient to support Corbett's convictions for obstruction of

justice. To be guilty of obstruction of justice under 18 U.S.C. § 1503 (2006), there must be a pending judicial proceeding, of which the defendant has knowledge, and the defendant "must have acted with the intent to influence, obstruct, or impede that proceeding in its due administration of justice." United States v. Littleton, 76 F.3d 614, 619 (4th Cir. 1996). A defendant's interference with the investigation of a grand jury is an obstruction of the due administration of justice. United States v. Grubb, 11 F.3d 426, 437 (4th Cir. 1993). After reviewing the record, we agree that the Government failed to provide evidence sufficient to support Corbett's conviction on these counts. Accordingly, we vacate Corbett's conviction on Counts 29 and 30, and remand so that a corrected judgment can be imposed.

## II. Count 1: Hobbs Act conspiracy

Count 1 charged Corbett and Belk with conspiring to violate the Hobbs Act. "The Hobbs Act prohibits robbery or extortion that 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." United States v. Williams, 342 F.3d 350, 353 (4th Cir. 2003) (quoting 18 U.S.C. § 1951(a)). In order to be convicted of conspiracy under the Hobbs Act, the Government must prove (1) the defendants conspired (2) to commit the underlying

5

robbery or extortion (3) that affected interstate commerce. Id.
To prove a conspiracy, the Government must show an agreement
between two or more parties, that the defendant was aware of the
conspiracy, and the defendant "knowingly and voluntarily became
a part of this conspiracy." United States v. Yearwood, 518 F.3d
220, 225-26 (4th Cir. 2008). "Commerce is sufficiently affected
under the Hobbs Act where a robbery depletes the assets of a
business that is engaged in interstate commerce." Williams, 342
F.3d at 354-55.

After reviewing the record, we find that the evidence
was sufficient to demonstrate Corbett's and Belk's conspiracy to
violate the Hobbs Act by way of robbing the Salisbury Dollar
General on December 11, 2005. Keith Turner, a coconspirator,
testified as to the conspiracy. Turner testified that the
Defendants discussed with him which store to rob, and the
location of the safe in the store. Turner twice scouted the
store at Corbett's instruction, providing information to Corbett
regarding the store's occupants and security.

This conspiracy is further shown through the events of
the robbery itself. That Belk was shot by police while fleeing
with a coconspirator necessarily demonstrates his participation
in the conspiracy. Concerning Corbett's participation, the jury
heard Turner's testimony describing his flight from the scene
with Corbett, including Corbett's attempts to hide his gun and

6

the stolen money.  Finally, it was undisputed that Dollar General was engaged in interstate commerce, as it was headquartered in Tennessee, and had over eight-thousand stores in thirty to forty states, and sold goods manufactured outside of North Carolina.  Thus, it is clear that the robbery affected interstate commerce, as it depleted the resources of a business engaged in interstate commerce.  Williams, 342 F.3d at 354-55.  Though the Defendants contend that we erred when concluding in Williams that a minimal effect on interstate commerce satisfied the jurisdictional requirement, one panel of this court cannot overrule the precedent established by a prior panel.  United States v. Chong, 285 F.3d 343, 346-47 (4th Cir. 2002).  Thus, the Defendants' arguments in this regard are unavailing.  As a rational trier of fact could find the essential elements of a Hobbs Act conspiracy beyond a reasonable doubt, Corbett's and Belk's sufficiency challenges to Count 1 fail.

Additionally, though Appellants now raise a venue challenge, they failed to do so before the trial court.  Though challenges to venue are of a constitutional dimension, they may be waived if not raised either before trial, or at the close of all the evidence.  See United States v. Ebersole, 411 F.3d 517, 524-25 (4th Cir. 2005); United States v. Melia, 741 F.2d 70, 71 (4th Cir. 1984).  Because Corbett and Belk failed to raise this

7

issue at any point before the district court, they have waived their right to challenge venue.

III.  Counts 2 and 3:  First Citizens Bank robbery

In Counts 2 and 3, Corbett was charged with bank robbery and aiding and abetting, in violation of 18 U.S.C. § 2, 2113(a), and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  Section 2113(a) of 18 U.S.C. proscribes the use of force, violence, or intimidation to "take[] or attempt[] to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank" insured by the FDIC.  To prove a violation of 18 U.S.C. § 924(c), the government must prove that the defendant used a firearm, and the defendant did so during and in relation to a crime of violence.  United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997).  "To prove the crime of aiding and abetting the government must show that the defendant knowingly associated himself with and participated in the criminal venture."  United States v. Kingrea, 573 F.3d 186, 197 (4th Cir. 2009).

After reviewing the record, we find that the evidence was sufficient to demonstrate that Corbett both robbed the First Citizens Bank and used a firearm while doing so.  It is

8

undisputed that the robbers of the First Citizens Bank used firearms to effect the robbery. One robber, carrying a black duffle bag, was wearing a dark shirt with a distinctive diamond pattern. At the robber's instruction, the bank teller put $1,356 and a dye pack in the bag, and gave the bag back to the robber, who then left the branch with his companion. The teller testified that the robbers entered a sedan and removed their masks, revealing that they were black males. As they drove away, the teller observed the dye pack exploding, and the robber throwing the bag into a nearby construction area. A crime scene investigator authenticated a black nylon bag filled with dye-stained currency that was found at the construction site, pictures of the bag, a spent dye pack, and a luggage claim ticket attached to the bag that read "Corbett, Andre." Additionally, the prosecution displayed a DMV picture of Andre Corbett alongside a surveillance photo of the robbery. In both pictures, Corbett was wearing the same dark shirt with a distinctive diamond pattern. Viewing this evidence in the light most favorable to the Government, a rational trier of fact could find the essential elements of Counts 2 and 3 beyond a reasonable doubt.

IV. Counts 9 and 10: Sam's Mart robbery

Count 9 charged Corbett and Belk with violation of the Hobbs Act by robbing and aiding and abetting the robbery of a Sam's Mart; Count 10 alleged that Corbett and Belk used a firearm in furtherance of the robbery. "A Hobbs Act violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce." Williams, 342 F.3d at 353.

First, it is undisputed that Sam's Mart is engaged in interstate commerce, as it sells items received from outside North Carolina. Therefore, it is clear that the robbery of this establishment affected interstate commerce. Williams, 342 F.3d at 354-55. Similarly, it is undisputed that the robber used a firearm in furtherance of the robbery.

Moreover, we find the Government presented sufficient evidence during its case in chief to demonstrate that Corbett assisted in the robbery. Rosalyn Joyner, a customer at the Sam's Mart during the robbery, testified that the robber was a black man, between 5 feet 8 inches and 5 feet 11 inches tall, and chubby, and was wearing a black t-shirt and a ski mask, and had darker skin than the driver of the get-away car. The car was a tan Ford Taurus, with the license number TXY-3193, which was registered to Corbett and his former fiancé, Jameelah Johnson. Additionally, Johnson testified that she had cosigned

10

for Corbett to purchase the car, and that the car was driven by Corbett. Toward the end of the trial, both Belk and Corbett stood so the jury could observe their relative heights, weights, hair styles, and relevant physical features. As Belk matched the description of the robber, and Corbett matched the description of the get-away driver, and the robbery was perpetrated using his car, a rational trier of fact could find the essential elements of Counts 9 and 10 beyond a reasonable doubt.

V. Counts 24 and 25: Stallings Dollar General robbery

Count 24 charged Corbett and Belk with violation of the Hobbs Act by robbing a Dollar General store in Stallings, North Carolina; Count 25 alleged that Corbett and Belk used a firearm in furtherance of the robbery. It is undisputed that the Dollar General is engaged in interstate commerce, as it sells items manufactured in other states and other countries. Therefore, it is clear that the robbery of this establishment affected interstate commerce. Williams, 342 F.3d at 354-55. Similarly, it is undisputed that the robbers used firearms in furtherance of the robbery.

Additionally, we find the evidence was sufficient to demonstrate that Corbett and Belk were the perpetrators of the robbery. Augustus King, district manager for Dollar General

11

Stores in the Stallings, NC area, authenticated surveillance recordings of the robbery, which were admitted into evidence and shown to the jury. From the surveillance video, the jury was able to observe the heights, weights, and physical features of the robbers.

Marsha Cochran, a lead clerk at the Dollar General, testified that one of the robbers approached her and began to search and question her, while the other walked the other direction through the store, searching for another woman the robbers believed was working with Cochrane. The robber questioning Cochrane was approximately 5 feet 8 inches or 5 feet 9 inches tall, and was wearing a black ski mask and black jacket. The robber pulled her around the back of the cash registers, and forced her at gunpoint to enter the store's office and open the safe. This was done in substantially the same manner as Corbett and Belk had perpetrated the Salisbury Dollar General robbery.

Additionally, Cochran testified that the store sold DVD players, and one was missing after the robbery. The surveillance video of the robbery showed one of the robbers repeatedly walking by the area in which the DVD players were kept. Jameelah Johnson, Corbett's former fiancé, testified that Corbett gave her a small, silver DVD player as a gift. The DVD player she received did not have a box or user's manual with it,

12

and it appeared to be the same type stocked by the Dollar General Store.  Viewing the evidence in the light most favorable to the Government, we find that a rational trier of fact could find the essential elements of Counts 24 and 25 beyond a reasonable doubt.

## VI.  Food Lion robberies

### A.  Counts 5 and 6:  Indian Trail Food Lion robbery

Count 5 charged Corbett and Belk with violation of the Hobbs Act by robbing the Indian Trail Food Lion; Count 6 alleged that Corbett and Belk used a firearm in furtherance of the robbery.  It is undisputed that the Indian Trail Food Lion is engaged in interstate commerce, as it sells items manufactured in other states and other countries.  (JA 675-76).  Therefore, it is clear that the robbery of this establishment affected interstate commerce.  <u>Williams</u>, 342 F.3d at 354-55.  Similarly, it is undisputed that the robbers used firearms in furtherance of the robbery.

Additionally, the evidence presented by the Government was sufficient to establish that Corbett and Belk were the perpetrators of the robbery.  Tiffany Horne, an employee at the Indian Trail Food Lion, testified that two masked men entered the store twenty minutes before closing time.  One of the robbers took approximately $200 from Horne's register, while the

13

other ran over to the customer service counter and went into the office. Horne testified that though both robbers wore ski masks, she could tell both were African-American, and one was larger than the other. The jury watched multiple videos of the robberies, in which they were able to observe the robbers' physical features, clothing, and the guns they carried; additionally, still frames of the robberies were entered into evidence. One such still frame depicted the smaller robber emptying a safe in the Food Lion office. While doing so, a taped revolver sat on the floor next to his feet. Jameelah Johnson testified that Corbett owned a revolver with silver tape on the handle, and images of such a revolver were recovered from Corbett's cell phone. Another still frame from the robbery depicted the larger robber holding a long gun while wearing distinctive white gloves with black stripes, the same as those worn by Belk when he robbed the Salisbury Dollar General.

B. Counts 13 and 14: Plaza Food Lion robbery

Count 13 charged Corbett and Belk with violation of the Hobbs Act by robbing the Plaza Food Lion; Count 14 alleged that Corbett and Belk used a firearm in furtherance of the robbery. Once again, the only dispute is whether the Defendants were the actual perpetrators of the offense. Tonya McQueen, an employee at the Plaza Food Lion, testified as to the August 29,

14

2005 robbery. McQueen testified that the two robbers entered the Food Lion around seven in the morning. The first robber was wearing a toboggan style mask and a dark blue mechanic's suit. He carried a black handgun. During McQueen's testimony, a surveillance video of the robbery was played, during which the jury was able to observe the robbers' physical features, clothing, and weapons. The video depicted the second, smaller robber going into the office with the bank manager.

Iris Faulkner-Riley, a Food Lion customer, also testified regarding the Plaza Food Lion robbery. Faulkner-Riley testified that she saw the larger robber carrying what appeared to be a sawed-off shotgun as he approached the cash register. The robber was African-American, and was wearing all black, with a black mask covering the lower half of his face. The robber instructed her to lay down on the floor and gave instructions to the other individuals at the cash register to do the same. During Faulkner-Riley's testimony, the jury watched two surveillance videos of the robbery, during which the jury as able to observe the robbers' physical features, clothing, and weapons. The jury also saw a still frame from the video, which depicted a robber wearing distinctive white gloves with black stripes. These gloves appeared to be the same as those worn by one of the robbers of the Indian Trail Food Lion and those worn by Belk when he was shot during the Dollar General robbery in

Salisbury, NC.   Additionally, the jury was shown a picture extracted from Corbett's cell phone, taken approximately thirty minutes after the Plaza Food Lion was robbed, which depicted a large pile of loose cash.

C.   Counts 20 and 21:   South Tryon Food Lion robbery

Count 20 charged Corbett and Belk with violation of the Hobbs Act by robbing the South Tryon Food Lion; Count 21 alleged that Corbett and Belk used a firearm in furtherance of the robbery.

Again, only the identities of the perpetrators is in question.   Jessica Duran, a store employee, testified that two armed men wearing masks entered the Food Lion at approximately 10:55 p.m., five minutes before closing time.   One robber had a handgun and the other had a longer gun that was grey at the end. Duran informed the jury that while she was hiding behind a cashier register, one of the robbers stood near the registers, telling her to put her head down, while the other robber went with the manager to the office.   The jury watched three surveillance videos of the robbery, while Duran identified the individuals depicted in the videos.

Joshua Floyd, a manager at the Food Lion, testified that he was standing at a computer kiosk at the front of the store at the time of the robbery.   One of the robbers hurdled

16

over the kiosk, grabbed Floyd from behind, and put a gun to his head. The robber pulled Floyd to the office and told him to open the office door, threatening to "blow [his] head off," when Floyd put the wrong key in the lock. When the door was open, the robber pushed Floyd toward the safe and instructed him to open it. Floyd testified that the robber was wearing a jacket and had a mask covering his whole face, and seemed to be only slightly taller than Floyd, who was 5 feet 4 inches tall, and sounded African-American. The other robber appeared to be at least 6 feet tall, if not taller. The jury watched three more surveillance videos of the robbery, depicting the physical characteristics and clothing of the robbers.

The videos of each of the Food Lion robberies, as well as the testimony of the customer and employee victims of the robberies, showed that the robbers' *modus operandi* in each robbery was identical. After entering the stores together, the larger robber would approach the cash registers, rob the customers or registers, and maintain control of the customers and employees, while the shorter, slimmer robber would seek out the office safe and force the manager to open it. The jury heard testimony that Corbett had worked at multiple Food Lion stores between 2003 and 2005, and that if someone was familiar with the safe in one store, he would be familiar with the safe in other stores as well. Therefore, viewing the evidence in the

17

light most favorable to the Government, we find the evidence sufficient to support these verdicts.

VII.  Count 31:  Threatening to assault a federal officer

Count 31 charges that Corbett threatened to assault an ATF agent working on his case.  The charge was based on a letter Corbett wrote to his girlfriend, Jameelah Johnson, in which Corbett told her he wanted to slice the agent's face with a box cutter, and "want[ed] to see him bleed."

Title 18 of the United States Code, Section 115(a)(1)(B), prohibits

> [T]hreat[s] to assault, kidnap, or murder, a . . . Federal law enforcement officer . . . with intent to impede, intimidate, or interfere with such . . . law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such . . . law enforcement officer on account of the performance of official duties.

18 U.S.C. § 115(a)(1)(B).  In Corbett's brief, he contends that the letter was nothing more than "a graphic expression of contempt for what the agent had done to the intended recipient of the letter."  Therefore, according to Corbett, "the letter was not a true threat, but, instead, speech protected by the First Amendment."  Corbett also asserts that making such statements was a form of therapy for him.

Corbett's arguments are unavailing.  "Statements constitute a true threat if an ordinary reasonable recipient who

18

is familiar with their context would interpret those statements as a threat of injury." United States v. Armel, 585 F.3d 182, 185 (4th Cir. 2009) (quotation marks and citations omitted). That a defendant cannot, or likely will not, carry out the statement does not render it unthreatening for purposes of the statute. Id. Here, since Corbett knew the referenced agent was investigating both Johnson and himself and had spoken with Johnson, we find a jury could conclude that a reasonable recipient would interpret Corbett's statements about slicing the agent's face with a box cutter as a threat, in retaliation for the agent's supposed persecution of Corbett. Accordingly, we find that the evidence was sufficient to allow a reasonable trier of fact to find Corbett guilty beyond a reasonable doubt of threatening a federal officer.

VIII.  Count 32:  Mailing a threatening communication

Count 32 charges that, in mailing the above-mentioned letter, Corbett violated 18 U.S.C. § 876.  Title 18 of United States Code Section 876

> [M]akes it a crime to knowingly deposit in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service or to knowingly cause the Postal Service to deliver any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to ... injure the person of the addressee or of another.

19

<u>United States v. Worrell</u>, 313 F.3d 867, 869 (4th Cir. 2002) (quoting 18 U.S.C. § 876) (quotation marks and alterations omitted). Here, it is undisputed that Corbett mailed the above-mentioned letter to Johnson. Because a reasonable recipient would interpret the statements contained in the letter as a threat, the evidence is sufficient to support Corbett's conviction for mailing a threatening communication.

Accordingly, we grant Corbett's motion to file a pro se supplemental brief,[2] affirm the judgment in part, vacate in part, and remand for further proceedings. We dispense with oral argument because the facts and legal contentions are adequately expressed in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>

---

[2] Though we grant Corbett's motion, we have reviewed Corbett's supplemental brief and find the claims raised therein to be without merit.