PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

     *Plaintiff-Appellant,*

v.

CALVIN ANTONIO BONNER,

     *Defendant-Appellee.*

No. 10-4768

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Thomas D. Schroeder, District Judge.
(1:09-cr-00246-TDS-1)

Argued: May 13, 2011

Decided: August 5, 2011

Before GREGORY, WYNN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Wynn and Judge Diaz joined.

## COUNSEL

**ARGUED:** Terry Michael Meinecke, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellant. Robert Lynn McClellan, IVEY, MCCLELLAN, GATTON & TALCOTT, LLP, Greensboro, North Carolina, for Appellee. **ON BRIEF:** John W. Stone,

Jr., Acting United States Attorney, Greensboro, North Carolina, for Appellant.

---

**OPINION**

GREGORY, Circuit Judge:

This case is about what constitutes a proper inference for a jury to draw when making determinations of guilt. Calvin Bonner was found guilty of armed robbery by a jury in October of 2009. In June of 2010, after a renewed motion for a judgment of acquittal, the district court overturned his conviction based on insufficient evidence. The government appealed that ruling, arguing that, viewing the evidence in the light most favorable to the government, the jury could have found sufficient evidence to convict Bonner. We disagree with the government and affirm the district court's opinion. We do so on the grounds that the government failed to produce sufficient "identity" evidence placing Bonner at the robbery and relied on unsubstantiated, unscientific inferences to bolster its minimal evidence. We conclude that no reasonable jury could find Bonner guilty beyond a reasonable doubt based on the evidence presented at trial.

I.

The defendant, Calvin Bonner, was indicted by a federal grand jury in the Middle District of North Carolina on July 27, 2009. The indictment alleged interference with commerce by robbery in violation of 18 U.S.C. § 1951(A)(2) and the use of a firearm during the crime in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Trial commenced on October 21, 2009. At the close of the government's case-in-chief, Bonner moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal

Procedure ("Rule 29"). The court reserved judgment. At the close of Bonner's case, Bonner renewed his motion, and the court again reserved judgment. The government presented rebuttal evidence, Bonner renewed his motion, and the district court again reserved judgment. On October 22, 2009, the jury returned a guilty verdict on both counts. On October 27, 2009, Bonner renewed his motion again. On June 16, 2010, the district court granted Bonner's motion and entered a judgment of acquittal. The government timely appealed.

The government alleged that on October 29, 2008, Darren Moore, an employee of a Subway Restaurant, observed a "pink" or "reddish" SUV parked at the back of the restaurant around 10:00 PM while he was emptying a mop bucket. J.A. 110-11. About thirty seconds later, Mr. Moore testified that he was confronted by two armed African American male assailants with pantyhose over their faces, hooded sweatshirts, and hats. Mr. Moore also testified that one robber was wearing a black and white Yankees hat. The suspects forced Mr. Moore into the restaurant, told him to call his supervisor, and ordered him to the floor. One of the robbers then confronted Casey Jones, the assistant manager, who gave him the money from the cash register. Mr. Moore testified that the robbery took roughly two minutes. After the robbers left, Ms. Jones called the police. Mr. Moore quickly locked the back door first and then moved to lock the front door. While locking the front door, Mr. Moore observed the SUV he had seen earlier pulling to the front of the restaurant and asked Ms. Jones to relay the car's description to the police. Ms. Jones described it as a reddish pink Honda Passport. The only physical characteristic of the robbers that Mr. Moore or Ms. Jones identified was that each was an African American male.[1]

---

[1]Detective Stephanie Murphy indicated that the store video showed that at least one of the robbers was 300 pounds, but no description of Bonner is provided in the record so it is not clear if he matches that description. The video was shot from above and the robbers were wearing bulky coats and thus it was hard to make out their physical characteristics.

The police were informed that two to three armed suspects robbed a Subway restaurant and fled the scene. Detective Andrew Eads responded to the call immediately. When he was approximately twenty to thirty seconds away from the Subway restaurant, Detective Eads received additional information that the suspects had fled in a burgundy Honda SUV. Detective Eads observed a burgundy Honda Passport exiting the restaurant's parking lot as he approached the scene. He conducted a stop of the car and found one occupant, Terry Bethea, with two small baggies of marijuana in his coat. Later, during a search of the car, Detective Eads along with Officer Brammer found several other items including: Bonner's identification and wallet, several rounds of .357 ammunition, a toy gun, two walkie-talkies, registration of the car to Tyra Edmonds (who was Bonner's girlfriend at that time), and some scattered clothing items. Three cell phones, belonging to Mr. Bethea, Ms. Edmonds, and LaMont Ruth (Bonner's cousin), were also recovered. Bonner placed several short calls to Ms. Edmonds' and Mr. Ruth's cell phones that night. The time between Ms. Jones' call to the police and Detective Eads' stop was approximately five minutes.

Surveillance footage revealed that Mr. Bethea, who was not charged with anything in conjunction with this incident, did not match the description of the robbers. Additionally, Mr. Moore did not identify Mr. Bethea as one of the robbers and told the detectives that the clothes recovered in the vehicle did not match the clothing worn by the robbers. Ms. Jones also testified that Mr. Bethea was not the robber because he was not sufficiently bulky. About thirty minutes after the police arrived, they asked Ms. Jones to identify a New York Yankees baseball hat recovered near the dumpster behind the restaurant. The police recovered the hat after their second search of the area surrounding the dumpster at the back of the restaurant.[2] Ms. Jones identified the hat as belonging to one of the

[2]At trial, the government contended that the robbers initially hid near the scene when police arrived. Then, once police left the back area of the restaurant, the robbers came out of hiding, fled, and dropped the hat as they left.

robbers. Forensic evidence from the hat showed that there were multiple DNA matches and that one of them, identified as the "predominant" profile, belonged to Bonner. Special Agent Karen Winningham, the forensic analyst, found other DNA on the hat, but did not try to match that DNA to other individuals. The DNA analysis could not determine who last wore the hat.

The government introduced additional evidence about the area around the Subway. Mr. Moore testified that there is generally traffic at the Food Lion located in the same plaza until it closes at 11:00 PM. The police conducted a search of the area using canine trackers that sniffed the Yankees hat. The first canine tracker followed the trail to a nearby condo development. The second canine tracker led the police to a Marathon gas station less than half a mile away. Almost five hours after the search was completed, a phone call was placed at the Marathon gas station to the home of Ms. Edmonds.

## II.

Rule 29 provides that at the close of the government's evidence, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When the court reserves decision on a Rule 29 motion, as it did in this case, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

We review a judgment of acquittal *de novo*. *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008) (citation omitted). Further, "we view the evidence in the light most favorable to the prosecution, and inquire whether a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." *Id.* Therefore, "[a] defendant challenging the sufficiency of the evidence faces a heavy burden." *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007) (citation omitted), *cert. denied*, 552 U.S. 1274 (2008).

We consider both circumstantial as well as direct evidence, and a conviction may rely entirely on circumstantial evidence. *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008). The court must be satisfied that there is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In assessing the evidence, the jury's resolution of all evidentiary conflicts and credibility determinations must be given deference. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997).

Bonner was charged with two criminal counts. In order to prove Count I, interference with commerce through robbery, the government must prove the following beyond a reasonable doubt: (1) on October 29, 2008, Bonner knowingly obtained property consisting of money belonging to the Subway restaurant at 12201 Highway 150 North, Winston-Salem, North Carolina, from the possession of an employee of that business; (2) Bonner took this property against the victim's will, by actual or threatened force; and (3) as a result of Bonner's actions, interstate commerce was affected in any way or degree. *See* 18 U.S.C. § 1951(a).[3] In order to prove Count II, carrying a firearm during and in relation to a crime of violence, the government must prove the following elements beyond a reasonable doubt: (1) Bonner knowingly used or carried a firearm; and (2) Bonner did so during and in relation to a crime of violence for which he may be prosecuted in a court of the United States. *See* 18 U.S.C. § 924(c)(1)(A)(ii).

### III.

The district court determined that the evidence against Bonner was not sufficient for a reasonable trier of fact to conclude that he was guilty beyond a reasonable doubt. In its opinion,

---

[3]It is undisputed that the government made an adequate showing that the robbery impacted interstate commerce.

the court relied on several missing, flawed, or contradictory facts which were presented by the government to conclude that the evidence against Bonner was insufficient. First, the court noted that neither store employee identified Bonner using "any facial characteristics, height or other distinguishing feature." *United States v. Bonner*, 735 F. Supp. 2d 405, 408 (M.D.N.C. 2010). Second, the court noted that the forensic evidence was not sufficient to conclude that Bonner was the last person to wear the hat and that any inferences by the jury to that effect were improper. Third, the court pointed out that the content of the cell phone calls was not in the record and could have been innocuous. Additionally, the court discounted the importance of the calls placed from the Marathon gas station because the calls occurred several hours *after* the canine had tracked the scent to the phone.

## IV.

We rely on two main arguments to conclude that there was insufficient evidence to convict Bonner.

First, there is a conspicuous absence of any contemporaneous "identity" evidence linking the defendant to the robbery. The government's entire case consists of four pieces of circumstantial evidence: (1) a hat with multiple DNA matches worn by Bonner was also worn by one of the robbers; (2) Bonner's wallet, discovered in the alleged getaway car; (3) phone records showing calls from Bonner's cell phone to Ms. Edmonds and Mr. Ruth the night after the robbery; and (4) a separate phone record showing a call from a nearby gas station to Ms. Edmonds. While it is possible to convict a defendant solely on circumstantial evidence, in cases where the identity of the perpetrator is in dispute, usually there is some specific "identity" evidence or uncontroverted physical evidence that links the defendant to the scene of the crime. *See, e.g.*, *United States v. Warren*, 593 F.3d 540, 547 (7th Cir. 2010) (defendant was found in possession of stolen money); *United States v. Kittrell*, No. 06-5265, 269 F. App'x. 338, 342

(4th Cir. March 17, 2008) (evidence included fingerprints, an in-court identification, and handwriting expert when DNA evidence was inconclusive); *Foster*, 507 F.3d at 245 (evidence of identity included evidence of past attempts to kill victim, letters instructing defendant to kill victim, and a taped conversation in which defendant was confronted about murdering victim and did not deny it); *c.f. United States v. Hinton*, No. 08-6787, 366 F. App'x 481, 484 (4th Cir. Feb. 24 2010) (relying on eyewitness evidence to show that there was sufficient evidence to implicate defendant). Here, only very flimsy facts tie Bonner to the robbery. Notably we lack any physical description of the robbers from the victims.

Strikingly, despite claims otherwise, no credible physical evidence indicates that Bonner was wearing the Yankees hat on the night of the robbery. The government disagrees and argues that because Bonner's DNA was "predominant," it was reasonable for the jury to infer that he was wearing the hat on the night of the robbery. However, the DNA expert testified that he could not conclude who last wore the hat based on the DNA despite the government's emphasis on the word "predominant." J.A. 320. Any assumption that Bonner was the last wearer is an impermissible inference by the jury.

The government also argues that the dog picked up the scent of Bonner's "predominant" DNA and tracked it to the Marathon gas station where calls were later placed to Bonner's girlfriend. It argues that it is logical to assume that the dog followed the strongest DNA match, but neither the government nor its experts provided the Court with any scientific basis to support that proposition. To the contrary, the only evidence presented at trial is that the dog would track the scent of the last person to wear the hat. At oral argument, the government suggested that because the facts are viewed in the light most favorable to the government, asking the jury to make a leap from "predominant" DNA to last wearer of the hat was reasonable. However, this confuses the permissible practice of viewing conflicting evidence and credibility in

favor of one side, with the impermissible practice of allowing juries to invent new evidence based on unsubstantiated scientific assumptions.

We find the government's reliance on these unsupported conclusions troubling for several reasons. First, using the reasoning of the government, that is to draw unscientific conclusions based on two disparate pieces of scientific evidence, many seemingly logical conclusions can be drawn. For instance, perhaps the robbers' DNA was not on the hat at all since the robber was wearing nylon over his head during the robbery. Perhaps Bonner perspires more than the others and therefore, his DNA was "predominant." Indeed, a jury could draw a number of apparently plausible, but analytically flimsy conclusions that border on pseudo-science from the expert evidence presented by the government. However, not every articulable inference is proper because scientific rigor demands more than a theory of plausible deductions strung together.

More fundamentally, the government's scientific theory as to identity lacks any evidentiary support in the record. Indeed, it is axiomatic that a party must lay a sufficient foundation before a jury is entitled to credit the opinion of an expert witness. For example, in *United States v. Johnson*, we held that a police officer who interprets the colloquial language in a phone conversation based on his experience with drug traffickers must be proffered as an expert. 617 F.3d 286, 294 (4th Cir. 2010). We focused on the fact that only experts with "specialized knowledge" can deliver testimony requiring specialized "knowledge, skill, experience, training and education." *Id.* Similarly, in this case, the government asked the jury to draw unwarranted inferences based on two unconnected pieces of scientific evidence through argument instead of specialized knowledge.

Finally, as the gatekeepers of expert testimony, courts must be careful to avoid the potential pitfalls of junk science. The

Supreme Court has repeatedly recognized that forensic science is an imperfect and human endeavor, and that the Sixth Amendment's "Confrontation [Clause] is one means of assuring accurate forensic analysis." *Melendez-Diaz v. Massachusetts*, ___ U.S. ___, 129 S. Ct. 2527, 2536-2537 (2009) (also discussing cases of fraud, error, and "drylabbing," where forensic analysts report results of tests that were never performed). Recently, the Supreme Court explicitly rejected the idea that forensic testing of blood, via gas chromatograph, is "simple or certain." *Bullcoming v. New Mexico*, 564 U.S. ___, 180 L. Ed. 2d 610, 617 (2011). Instead, the Court noted that conducting such tests "requires specialized knowledge and training. Several steps are involved in the gas chromatograph process, and human error can occur at each step." *Id.*

More broadly, the Supreme Court has noted the "wide variability across forensic science disciplines with regard to techniques, methodologies, reliability, types and numbers of potential errors, research, general acceptability, and published material." *Melendez-Diaz*, 129 S. Ct. at 2537 (citations omitted). *Melendez-Diaz* also highlighted the conclusions of a National Academy Report that "[t]he forensic science system, encompassing both research and practice, has serious problems that can only be addressed by a national commitment to overhaul the current structure that supports the forensic science community in this country." 129 S. Ct. at 2537 (citations omitted). We must thus be particularly vigilant when the government, as in this case, asks us to rely on scientific evidence as the primary basis for upholding a conviction. Our commitment to scrutinizing such evidence counsels against crediting the government's assertions that the DNA evidence in this case supported a guilty verdict against Bonner.

For the foregoing reasons, we find that the district court correctly concluded that no reasonable trier of fact could conclude that Bonner was guilty beyond a reasonable doubt. Therefore, we affirm the district court's conclusion that there was insufficient evidence to convict Bonner in this matter.

*AFFIRMED*