**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4782**

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

LAMONT KORTEZ GAINES,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:17-cr-00106-TSE-4)

Submitted:  March 27, 2020                                          Decided:  June 5, 2020

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Daniel Suleiman, Brendan Duffy, COVINGTON & BURLING LLP, Washington, D.C., for Appellant.  G. Zachary Terwilliger, United States Attorney, Rebeca H. Bellows, Assistant United States Attorney, Alexander E. Blanchard, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lamont Gaines appeals his conviction for carjacking, in violation of 18 U.S.C. § 2119, after a jury trial convicting him on twelve counts. Gaines contends that the evidence was insufficient to support his conviction for carjacking and that the district court thus erred in denying his motions for a judgment of acquittal on that charge. For the reasons that follow, we affirm.

I.

A.

On March 18, 2017, Muhammad Kurshid's white Nissan Altima was stolen from the parking lot of an apartment complex in Alexandria, Virginia. Kurshid was walking from an apartment to his car when he noticed a man attempting to open one of the car's doors. When Kurshid moved to get a closer look, a second man approached him, pointed a gun, and told him to put his hands up. The first man then approached and took Kurshid's wallet, cell phone, and car keys from his pocket. The two men got in Kurshid's car and drove away.

Kurshid called 911 two or three minutes after the robbers fled. During the call, Kurshid described one of the men as being approximately six feet tall, 150 pounds, clean shaven, and wearing a black hoodie, tan jeans, and black shoes.

Security camera footage recorded twenty minutes after the carjacking showed Gaines and another man, Desmar Gayles, exiting the stolen car and entering a food market

2

in southeast Washington, D.C.  The footage showed that Gaines had been driving the car, had facial hair, and was wearing a black hoodie, black jeans, and pink shoes.

B.

A month later, Gaines, Gayles, Anton Harris, and Andrew Duncan were arrested in relation to a string of armed robberies and related carjackings in the Washington, D.C. metropolitan area.  Collectively, the group was charged with forty-one counts.  Gaines was charged with eighteen counts, including one count of carjacking stemming from the theft of Kurshid's car.[1]  His codefendants each pleaded guilty to two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, while Gaines elected to go to trial.

At trial, Kurshid testified regarding the carjacking.  Kurshid explained that the taller man he had described to the 911 operator (who the government alleged was Gaines) was the one who took his keys, phone, and wallet.  According to Kurshid, the taller man had "[j]ust [a] little bit" of facial hair, but "no [] heavy beard" and affirmed that he was wearing a black hoodie, tan jeans, and black shoes.  J.A. 491.  Further, when asked about the inconsistencies in his testimony and the 911 report regarding the man's facial hair, Kurshid explained that he was scared and his attention was focused on the gun, not the carjackers' features.

---

[1] A person commits the crime of carjacking if he, "with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so."  18 U.S.C. § 2119.

Additionally, the government introduced the following text message conversation between Gaines and Harris from approximately thirty minutes before the carjacking:

> Harris: "Make sure you keep your head low broski."
> Gaines: "I[']m hip."

J.A. 2097. The government offered the message exchange as evidence of a plan for the carjacking.

FBI Special Agent James Berni testified as an expert regarding his analysis of historical call detail[2] from the cell phones belonging to Gaines and his coconspirators. The relevant cell phone data placed Duncan, Gayles, and Harris at or near the apartment building when Kurshid's car was stolen. The FBI was unable to retrieve call data for Gaines's phone. Berni explained that this lack of data could mean that Gaines had shut off his phone or was not using it at the time.

Additional call detail showed Gayles's phone traveling towards Washington, D.C. during the first few minutes after the carjacking, while Harris's phone remained connected to the cell tower at the apartment complex where the carjacking occurred. Agent Berni thus concluded that Gayles and Harris were in separate cars. According to the government, this evidence showed that the conspirators had split into teams of two, with Gaines and Gayles in the stolen vehicle.

---

[2] Call detail analysis combines call data records, which record data from when a cell phone engages in activities that utilize a data plan, with the location of cell towers. The analysis provides an approximate location of a cell phone at a specific time when it used the network.

The government urged the jury to place little weight on Kurshid's description of the carjacker to the 911 operator—which was inconsistent in some respects with how Gaines looked in the surveillance video—because Kurshid was scared during the carjacking and wasn't focused on the robber's features and clothing. Instead, the government asserted, the jury should focus on the surveillance video showing Gaines driving the stolen vehicle about twenty minutes after the crime occurred.

At the close of the government's evidence, Gaines moved for a judgment of acquittal on all counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion but suggested that if Gaines were to raise his motion again should he receive an unfavorable verdict, the court would reconsider the evidence as to the carjacking count at that time.

Gaines elected to testify at trial. He claimed that he was in the stolen car because Gayles drove past him and picked him up as he was walking to a "female's house." J.A. 1641. According to Gaines, he was driving the stolen vehicle because Gayles didn't know how to get to the house. At some point, the pair decided to stop at a food market, and when they returned to the car, it would not start. They then abandoned the car at the market, where the police eventually recovered it. Gaines claimed that he didn't know the car was stolen and that he believed Gayles was "rent[ing]" the car from one of his drug customers in exchange for drugs. J.A. 1643. Additionally, Gaines explained that his text message exchange with Harris referred to Gaines dealing marijuana, not the carjacking.

At the close of evidence, Gaines renewed his Rule 29 motion, which the district court again denied. The court again advised Gaines to renew his motion if he received an

5

unfavorable verdict and stated that, at that time, it would reconsider its ruling as to the carjacking count.

The jury returned a guilty verdict on twelve of the eighteen counts, including the carjacking count. Gaines didn't renew his Rule 29 motion following the verdict.[3]

This appeal followed.

## II.

Gaines argues that the district court erred by denying his Rule 29 motions for a judgment of acquittal. We do not agree.

We review de novo a district court's denial of a Rule 29 motion. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005).

Under Rule 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). We must view the evidence in the light most favorable to the government, and we must affirm a guilty verdict if it is supported by "substantial evidence." *Alerre*, 430 F.3d at 693 (cleaned up). "Substantial evidence" means "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (cleaned up). We must assume that the jury resolved any inconsistencies in the testimony in the government's favor. *Id.*

---

[3] Nonetheless, Gaines's earlier Rule 29 motions preserved his sufficiency-of-evidence argument. *See United States v. Butler*, 211 F.3d 826, 829 (4th Cir. 2000).

Gaines lodges two complaints regarding the government's evidence. First, Gaines contends that the inconsistencies in the victim's description of the carjackers prove that someone other than Gaines stole the vehicle. Second, he posits that the messages exchanged between Gaines and Harris have plausible explanations aside from the carjacking.

Gaines compares the evidence in his case to that in *United States v. Bonner*, where we affirmed the district court's conclusion that there was insufficient evidence to support a guilty verdict. There, we found that the government failed to produce sufficient identity evidence placing Bonner at the scene of a robbery and relied on unsubstantiated, unscientific evidence to bolster minimal evidence. We explained:

> [T]here is a conspicuous absence of any contemporaneous "identity" evidence linking the defendant to the robbery. The government's entire case consists of four pieces of circumstantial evidence: (1) a hat with multiple DNA matches worn by Bonner was also worn by one of the robbers; (2) Bonner's wallet, discovered in the alleged getaway car; (3) phone records showing calls from Bonner's cell phone to [his girlfriend] and [his cousin] the night after the robbery; and (4) a separate phone record showing a call from a nearby gas station to [Bonner's girlfriend]. While it is possible to convict a defendant solely on circumstantial evidence, in cases where the identity of the perpetrator is in dispute, usually there is some specific "identity" evidence or uncontroverted physical evidence that links the defendant to the scene of the crime.

648 F.3d 209, 214 (4th Cir. 2011). We also noted the complete "lack [of] any physical description of the robbers from the victims." *Id.* Indeed, the only identifying information offered by the victims was that the robbers were African American. *Id.* at 211. Additionally, the government relied on unsupported inferences to conclude that Bonner's DNA was on the hat because he had worn it during the robbery. *Id.* at 215.

7

*Bonner* is not this case.  For starters, the identity evidence here is stronger than in *Bonner* because it includes a physical description of the robbers by the victim and video of Gaines driving the stolen vehicle.  And while Kurshid's description of the carjackers in the 911 call was partially inconsistent with the video, the jury could have resolved any discrepancies by accepting Kurshid's explanation for them.

Further, in *Bonner* we cited *United States v. Warren*, 593 F.3d 540, 547 (7th Cir. 2010), where the defendant was found in possession of stolen money, as an example of a case with sufficient identity evidence linking the defendant to the scene of the crime.  Here (and unlike in *Bonner*), the video of Gaines driving the vehicle twenty minutes after it was stolen directly links Gaines to the crime.

This case is closer to *United States v. Corbett*, where we found that a victim's physical description of the robbers (including their approximate height, weight, and clothing), combined with the fact that the getaway vehicle's license plate was registered to the defendant's car, was sufficient to uphold a guilty verdict.  *See* 374 F. App'x 372, 377 (4th Cir. 2010).  Here, Kurshid's description in the 911 call of one of his assailants was mostly consistent with that shown in the surveillance video, even if not an exact match.  And when considered in conjunction with the video of Gaines driving the vehicle twenty minutes after it was stolen and the evidence from the historical call detail analysis, we find it more than adequate to support Gaines's conviction.

Finally, Gaines argues that the district court recognized the weakness of the government's proof by suggesting that he renew his Rule 29 motion if he were to receive an unfavorable verdict.  He reads too much into this suggestion.  If the district court truly

8

had a concern about the verdict, it could have granted a judgment of acquittal sua sponte. *See* Fed. R. Crim. P. 29(a) ("The court may on its own consider whether the evidence is insufficient to sustain a conviction."). But it didn't do so.

* * *

For the reasons given, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

9